Gertrude A. FARNSWORTH and Gertrude Adams Farnsworth, James D. Carpenter and Robert M. Sharpe, Executors of the Last Will and Testament of Daniel Williams Farnsworth, Deceased, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent (two cases).

Nos. 12703, 12704.

United States Court of Appeals Third Circuit.

Argued Dec. 18, 1958.

Reargued June 11, 1959.

Decided Oct. 9, 1959.

James D. Carpenter, Jersey City, N. J. (Carpenter, Bennett & Morrissey, Jersey City, N. J., Milton A. Dauber, Jersey City, N. J., on the brief), for petitioners.

Carter Bledsoe, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson and A. F. Prescott, Attys., Dept. of Justice, Washington, D. C., on the brief), for respondent.

Before BIGGS, Chief Judge, and McLAUGHLIN and HASTIE, Circuit Judges.

BIGGS, Chief Judge.

In these cases the petitioners-taxpayers, the executors of the decedent Farnsworth,[1] the senior or managing partner in a series of partnerships styled "Farns··

---

[1] The taxpayer, Daniel W. Farnsworth, died of a heart attack on September 25, 1958. His executors, Gertrude Adams Farnsworth, James D. Carpenter, and Robert M. Sharpe, by order of the Tax Court dated October 16, 1958, were substituted as petitioners in his stead. The taxpayer's wife signed joint returns.

worth & Farnsworth" over a number of years, seek to deduct from Farnsworth's federal income tax bases for the years 1952 and 1953 amounts paid by him to the State of New York by way of compromise of claims asserted by the New York State Tax Commission for taxes due from the partnerships under the Unincorporated Business Tax Law of New York, 59 McKinney's Consol.Laws of New York, c. 60, Section 386 et seq., and sums paid by Farnsworth by way of compromise of individual income tax claims asserted by the State of New York against him and his partners, 59 McKinney's Laws of New York, Tax Law, § 350 et seq.

The Farnsworth partnerships and Farnsworth and his partners did not pay New York taxes despite the fact that the partnerships as consultants for woolen mills did some business in New York and at least one of the partners in one of the successive partnerships lived there. Farnsworth, being informed of probable New York tax liability by his counsel, filed partnership returns with the New York State Tax Commission which showed substantial tax liabilities. These returns were audited by the Commissioner and the amounts due were increased by interest and penalties. Tax liens in favor of the State of New York were filed against the partnerships and against the individual partners in New York. After considerable negotiation the New York tax authorities agreed to compromise all tax liabilities if confessions of judgment for personal and partnership taxes, which would be enforceable in every State, were procured from Farnsworth and his partners.

Thereafter, at a meeting at his home in Montclair, New Jersey, on April 24, 1952, Farnsworth, then eighty-six years of age and suffering from a heart attack, and greatly troubled by the hard tax situation confronting himself, his partnerships, and his partners, some of whom were related to him by blood or marriage, stated that he would assume all New York tax liability of the partnerships and of the individual partners if the individual partners would cooperate by executing confessions of judgment as required by New York. It is conceded that Farnsworth waived his right to contribution from his partners, if any, for the payments made or to be made by him on their behalf. A compromise agreement with New York was executed by all the partners [2] and Farnsworth and his partners executed the required confessions of judgment which were entered against them. Thereafter Farnsworth paid in installments the full amount of the compromise which embraced all partnership and individual tax liability. As we have said, the Tax Court refused to permit these deductions in gross but did, however, allow Farnsworth to deduct the sums paid by him by way of compromise of his own New York State income tax liability and also permitted him to deduct his aliquot portion of the sums paid by him in compromising the partnership liabilities due under the Unincorporated Business Tax Law of New York. See 1958, 29 T.C. 1131.

Farnsworth's executors contend that his estate is entitled to take as deductions all the sums paid by him pursuant to Section 23(a) (1) (A) or Section 23 (c) (1) [3] of the Internal Revenue Act of 1939, 26 U.S.C.A. (I.R.C.1939) § 23. The Commissioner not only disputes the applicability of these two sections but argues that even if the sums paid could be taken as deductions ordinarily, nonetheless Section 385 of the New York Tax Law, 59 McKinney's Laws of New York § 385, prevents the taxpayers, Farnsworth's executors, from deducting the amounts paid by him by way of compro-

---

2. See Exhibit 21.

3. "§ 23. Deductions from gross income. In computing net income there shall be allowed as deductions:
   "(a) (1) (A) All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. * * *
   "(c) Taxes generally.
   "(1) Allowance in general. Taxes paid or accrued within the taxable year. * * * "

mise of either his partners' personal income taxes or of the partnerships' unincorporated business taxes. Section 385 forbids any person from directly or indirectly contracting to pay another's personal taxes, and provides that any such contract will be null, void and unenforceable.[4, 5] The Commissioner contends that Farnsworth's agreement to pay the State personal income taxes of his partners is illegal, void and unenforceable under New York law. He contends next that under Di Raimondo v. Lembo, Sup. 1946, 63 N.Y.S.2d 906, the agreement made by Farnsworth to compromise the partnerships' taxes is also void as against the public policy of the State of New York despite the fact that Farnsworth was individually liable for all of the partnership taxes as was every other member of the partnerships under the law of New York, 38 McKinney's Consol.Laws of New York, c. 39, Section 26. The Commissioner contends that since the agreement concerning the compromise of both the personal and the partnership taxes was embodied in a single document the agreement of Farnsworth to compromise the partnership taxes, for which he was liable, was contaminated by Farnsworth's agreement to pay his partners' individual New York income tax liabilities. The Commissioner does not contend, and logically cannot contend, that the payment by Farnsworth of his own individual income taxes was against public policy.

The Commissioner argues that under the doctrine, most recently expressed in Tank Truck Rentals, Inc. v. Commissioner, 1958, 356 U.S. 30, 78 S.Ct. 509, 2 L. Ed.2d 562, and Hoover Motor Express Co. v. United States, 1958, 356 U.S. 38, 78 S.Ct. 511, 2 L.Ed.2d 568, deductions will not be permitted from federal income taxes when the allowance of such deductions will contravene a sharply defined State public policy. Therefore, argues the Commissioner, permitting a deduction for another partner's personal income tax would undermine New York's sharply defined public policy, and consequently we may not permit the deductions sought by Farnsworth in respect to the payments made by him to settle his partners' and partnerships' tax liabilities.

Farnsworth's executors, the taxpayers, argue that the compromise agreement made and subsequently executed by Farnsworth with his partners for the settlement of all New York tax liabilities is to be construed by New Jersey law and thus Section 385 of the New York Tax Code is inapplicable, and furthermore that even if New York law be deemed to be applicable the assumption of settlement of the partnership taxes by Farnsworth may be severed from the assumption of settlement by Farnsworth of his partners' personal taxes, and that in any case the policy expressed in Section 385 is not such as to require protection by denying federal income tax deductions.

We can perceive no question of conflict of laws presented by the facts at bar. The issues presented must be resolved by federal law since federal tax issues are involved. If the circumstances presently presented are such as to contravene the public policy of New York within the ruling of Tank Truck Rentals, Inc., in our opinion it would make no difference as to where the compromise agreement was entered into or where it was executed. The tax law of the United States is uniform and is the same in New Jersey as it is in New York and throughout the United States.

---

4. 59 McKinney, Tax Law, § 385, provides: "It shall be unlawful for any person to agree or contract directly or indirectly to pay or assume or bear the burden of any tax payable by any taxpayer under the provisions of this article [i. e. personal income taxes]. Any such contract or agreement shall be null and void and shall not be enforced or given effect by any court."

5. The issue of frustration of State policy was first raised by this court *sua sponte*. Reargument was granted because of it and the parties ably argued orally and on their briefs the issue suggested as pertinent by the court.

The New York State Tax Commission conditioned settlement upon the execution of confessions of judgment for the personal income taxes of Farnsworth's partners and for the partnerships' New York unincorporated business taxes as well. Farnsworth's liability also was required to be covered by a confession of judgment. On this record, however, it does not appear affirmatively that the New York State Tax Commission was aware that Farnsworth made himself liable for the compromise of all the tax liabilities. Nor does it appear, despite the fact that Farnsworth made the payments by his own personal checks and signed some of the confessions of judgment which also were signed by other individual partners, that the New York State Tax Commission knew that he was making these payments from his own funds *solus* and waiving his right of contribution from his partners. Section 385 is not a criminal, a quasi-criminal, or even a penalty statute. Its sanctions are purely civil, i. e., the denial of enforcement of contracts made contrary to its provisions.[6] In the Tank Truck Rentals, Inc. case the Supreme Court held that fines for violation of State maximum weight laws were not deductible as ordinary and necessary business expenses under Section 23(a) (1) (A) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 23(a) (1) (A), and that to allow the deductions would frustrate State policies proscribing particular types of conduct evidenced by State Law. Here the deductions are sought by Farnsworth under Section 23(a) (1) (A) and Section 23(c) (1) of the Internal Revenue Code of 1939, 26 U.S.C.A. §§ 23(a) (1) (A), 23(c) (1).

■ We can perceive no substantial basis for making a distinction in respect to the federal statute under which the deduction is sought to be allowed and none in the fact that Farnsworth acted apparently in innocent contravention of the New York statute. Hoover Motor Express Co. v. United States, supra. It appears, however, that the doctrine of contravention of a State revenue statute set out in Textile Mills Securities Corporation v. Commissioner, 1941, 314 U.S. 326, 62 S.Ct. 272, 86 L.Ed. 249, and Commissioner of Internal Revenue v. Heininger, 1943, 320 U.S. 467, 473, 64 S.Ct. 249, 88 L.Ed. 171, was intended to be and is shown to be a limited one by the decisions in Tank Truck Rentals, Inc. and Hoover. Tank Truck Rentals, Inc. teaches that each case must turn on its own facts and that the test of non-deductibility always lies in the severity and immediacy of the frustration which would result to the State from the allowance of the federal deduction. Under Section 385 payment is not a statutory violation. The contract for the payment is merely rendered unenforceable. Here, the compromise agreement was executed fully. This is not a minor distinction in view of the fact that the New York *fisc* was not frustrated for it received the funds for which it contracted by way of the compromise agreement. The purpose behind the New York State statute is unclear, to say the least. We have found no decision and none has been cited to us which applies the doctrine of frustration to statutes purely civil in their nature. Absent an express ruling by the Supreme Court on this issue, we are of the opinion that the tendency of that Court is to limit the effect of the frustration doctrine and we state it as our view, upon consideration and examination of the cases, that the Supreme Court would not apply the doctrine of Textile Mills Securities Corporation v. Commissioner

---

6. The precise motivation of Section 385 is difficult to ascertain. There seems to be no available legislative history. However, it is interesting to note that many States recognize as legal covenants to pay other's income taxes. See e. g. Young v. Illinois, 310 Ill. 75, 141 N.E. 369, 30 A.L.R. 985; Republic Bldg. v. Gaertner, 201 Ky. 509, 256 S.W. 1111, 30 A.L.R. 982; Kimball v. Cotting, 229 Mass. 541, 118 N.E. 866, L.R.A.1918C, 1189. It is possible that the intent of the New York State Legislature in enacting Section 385 was merely to prevent collusive or otherwise illegal agreements in respect to divorce proceedings.

and similar authorities, under the circumstances of the case at bar, to deprive Farnsworth's estate of the benefit of deductions specifically provided for by the federal income tax statutes.

We must determine next if any provisions of the 1939 Tax Code permit the deductions in issue. In this connection we deal first with all of the deductions sought without regard to whether they are sought under Section 23(c) (1) or Section 23(a) (1) (A). We will discuss the applicability of the two sections referred to at a later point in this opinion. Farnsworth argues that by oral modifications of the partnership agreements, effected *post* the discovery by him and his partners of the New York State tax liabilities he made himself solely liable for those liabilities and therefore should be permitted to deduct the payments made by him by way of compromise from his federal income taxes in the years in question. That Farnsworth did undertake to make himself so liable and did not exact any contribution or reimbursement from his partners for their shares of the sums paid by way of compromise of the tax liabilities cannot be disputed. But the Commissioner ruled and the Tax Court in effect found that the assumption of liability and payment of the sums required by the compromise by Farnsworth and his waiver of his right to contribution from and reimbursement by his partners constituted a mere gift and was not supported by valid consideration.

Farnsworth's executors' position is of course to the contrary and can be summed up as follows. They assert and Farnsworth asserted at the trial that he could not do business in New York unless all tax liabilities, his own, those of his partners and those of the partnership were paid or compromised.[7] Farnsworth testified that the New York State Tax Commission was unwilling to settle or dispose of any tax liability unless all tax liabilities were compromised. But if all tax liabilities were compromised the Commission was willing to permit installment payments. It was his evidence that to get his partners to agree to the compromise and to execute confessions of judgment he had to agree to waive his right to contribution from or reimbursement by his partners for they hotly contested all of the New York tax claims.[8] Farnsworth's counsel who engineered the compromise agreement with the New York State Tax Commission strongly supported the evidence given by Farnsworth in these respects by his testimony. *Ergo*, say the taxpayers, Farnsworth, cast upon the horns of this dilemma, was compelled to compromise all tax liabilities at his own expense.

In respect to these issues the Tax Court stated "It is, to be sure, contended that petitioner could not settle his own liability for the taxes in question without disposing of all of the New York State claims in one arrangement and that his ex-partners were unwilling to concede their liability. But as the case is presented, we are unable to find that any defense the ex-partners may have had would have been effective, nor indeed that it was necessary for petitioner to relinquish his rights of contribution had he made the settlement by paying the entire amount and seeking to recover from the ex-partners."

■ That Farnsworth could not do business in New York unless the income taxes and taxes arising under the New

7. When asked what would have been the effect on his partnership or partnerships of non-settlement of the New York tax liabilities Farnsworth replied: "Rather disastrous."

When asked what would have been the effect on the business of the partnerships if all tax liability had had to be paid "at one lump", Farnsworth replied: "[I]t would ruin them."

8. Only two partners apparently did not object to paying or comprising their respective New York State tax liabilities. One was Peter Egan who lived in New Jersey. The other was James Hastie, the partner resident in New York. The compromise agreement covered all partners in all of the partnerships existent at the critical dates and also all partnerships involved in New York tax liabilities.

York Unincorporated Business Tax Law due from him were paid or compromised is a self-evident and necessary inference which this court is entitled to draw. Any business accounts which accrued to Farnsworth's advantage in New York could have been garnished by that State and he also would have been subject to criminal penalties as well. See 59 Mc-Kinney's Laws of New York, Tax Law, § 376. But we cannot infer from the record that Farnsworth could not effect the compromise unless he undertook personally to pay the sums required by the compromise without contributions from or reimbursements by his partners. The Tax Court in effect found against the taxpayers on this issue, or at least made no finding or conclusion supporting their assertion in this regard. The obstacle to deciding in Farnsworth's executors' favor on this issue lies in the fact that we cannot hold on consideration of the whole of the records the result reached by the Tax Court was clearly erroneous. We have scrutinized the testimony in these cases and all of the documentary evidence. We shall not discuss the records or detail Farnsworth's own statements but the latter do afford a basis whereby the Tax Court was entitled to conclude that Farnsworth's mind was, to employ his own words, "fixed to settle it and get the whole thing off the slate," and that he felt himself bound by a moral obligation as the chief partner to wipe out the tax liabilities of his partners and the partnerships. It must be borne in mind also that there were strong familial reasons for Farnsworth to do this. Some of his partners were related to him by blood and marriage and many of them had been in business with him for years. We cannot say that the Tax Court was clearly in error in concluding that Farnsworth was not compelled to settle *solus* all tax liabilities of his partners and his partnerships in order to conduct or maintain his business in New York.

It follows that Farnsworth's executors are not entitled to the deductions sought by them under Section 23(c) (1) as taxes paid or accrued within the taxable years for Farnsworth gratuitously assumed full liability without contribution or reimbursement for the payment of the compromise of the New York State tax liabilities and therefore the payments made by him are not deductible. We point out also that sums paid by way of taxes are deductible only by the person upon whom the taxes are imposed except under certain special circumstances not present here. See Magruder v. Supplee, 1942, 316 U.S. 394, 396, 62 S.Ct. 1162, 86 L.Ed. 1555 quoting Article 23(c)–1 of Treasury Regulations 94. Specifically as to the partnerships' New York tax liability since the Tax Court failed to find or conclude that Farnsworth had to waive contribution from his partners in order to effect the settlement but did this gratuitously, his executors are entitled to deduct only his aliquot share of the sums paid by him in compromise of the partnership tax liabilities.

Section 23(a) (1) (A) cannot afford a basis for the deductions since the obligations were found by the Tax Court to be gratuitously assumed by Farnsworth and therefore the payments made by him in settlement of them did not constitute a business necessity.

The decisions of the Tax Court will be affirmed.