# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00651-CV

**Gables Realty Limited Partnership, Appellant**

**v.**

**Travis Central Appraisal District, Appellee**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT
NO. 99-09733, HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING**

The question presented by this appeal is whether, under section 25.07 of the Texas Tax Code, state-owned property remains tax exempt after it is leased Afor compensation to a private business enterprise . . . for a purpose not related to the performance of@ state duties and functions. *See* Tex. Tax Code Ann. '' 11.11(d), 25.07(a) (West 2002). Gables Realty sued the Travis Central Appraisal District seeking a reduction of the ad valorem taxes assessed on two tracts of land it leased from the State. Appealing from an adverse ruling, Gables Realty asserts that, even though it uses the properties for non-public purposes, the properties are tax exempt in the hands of their owners; therefore, pursuant to section 25.07, Gables Realty should properly be taxed only on the value of the leasehold estate, not the fee simple estate. We hold that Gables Realty=s private commercial use of the property vitiates the state owner=s prior

tax exempt status; therefore, section 25.07 does not provide Gables Realty the relief it seeks. We affirm the district court=s judgment.

*The Controversy*

Gables Realty constructed and operates apartment complexes on two leased tracts of landCone owned by The University of Texas, the other by Austin State Hospital.[1] The University property is subject to a fifty-year lease and the Hospital property to a seventy-year lease.[2] The lease terms on both properties provide that Gables Realty is obligated to pay any ad valorem taxes assessed on the properties and, upon termination of the leases, all improvements revert free and clear to the respective landowners. Because the Appraisal District=s tax rolls list the land and the improvements separately, Gables Realty is responsible for two separate assessments. Only the land appraisals are at issue in this appeal.

The Appraisal District listed both land accounts in each of the fee owner=s respective names and assessed taxes based on the lands= fee simple market value. Gables Realty protested the appraisal value, contending that the land should be listed in its name, not the owners=, and appraised at the market value of the leasehold estates, not the market value of the fee simple estate. The Appraisal District=s Review Board denied Gables Realty=s protest. Gables Realty subsequently filed suit in the district court, where both parties moved for partial summary judgment. Gables Realty=s motion asserted that, based on Tax Code

---

[1] The parties= briefs refer to the Austin State Hospital property as the Texas Department of Mental Health and Mental Retardation property; however, Gables Realty=s first amended original petition and the Appraisal District=s tax records reflect that the actual ownership interest in the property is listed in Austin State Hospital=s name. We refer to the property as it appears in the Appraisal District=s records.

[2] The Hospital property is actually being subleased from West 38th Street, Ltd., a Texas limited partnership, which is leasing the property from the Department of Mental Health and Mental Retardation for a term of seventy-five years.

sections 25.07 and 23.13, the land accounts were tax exempt properties in the hands of their respective owners and, as such, in the hands of Gables Realty, the property should be assessed only at the market value of its leasehold estates. The Appraisal District=s motion sought a determination that, because Gables Realty uses the properties for private commercial purposes, neither the University=s nor the Hospital=s property is exempt from taxation; thus, fair market value on the fee simple estate represents the appropriate appraisal value. The trial court granted the Appraisal District=s motion, denied Gables Realty=s motion, and signed an order of severance, thereby making the summary judgment final and appealable. It is from that judgment that Gables Realty now appeals.

**DISCUSSION**

The parties do not dispute the facts material to this case. Consequently, the propriety of summary judgment is a question of law and we review the district court=s decision *de novo. See Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex. 1994); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985). Where both parties file a motion for summary judgment, and one is granted and one is denied, we determine all questions presented and render such judgment as the trial court should have rendered. *See Commissioners Court v. Agan*, 940 S.W.2d 77, 80 (Tex. 1997).

The section at the heart of this dispute, Tax Code section 25.07, provides in pertinent part:

> [A] leasehold or other possessory interest in real property that is exempt from taxation to the owner of the estate or interest encumbered by the possessory interest shall be listed in the name of the owner of the possessory interest if the duration of the interest may be at least one year.

Tex. Tax Code Ann. ' 25.07(a). The parties stipulated for summary judgment purposes that, prior to Gables Realty=s lease agreements, the properties were tax exempt in the hands of their respective owners. The parties disagree, however, on the tax consequences of Gables Realty=s use of the property after executing the lease agreements. Gables Realty contends that the property remains exempt even though the lease agreements permit Gables Realty to use the properties for a non-public purpose. The Appraisal District argues that, at all times, the use to which the property is put determines whether it is tax exempt. Because the land is now being used for a commercial, non-public purpose, the Appraisal District contends that the property is not exempt in the hands of its owners.

As a preliminary matter, Gables Realty asserts that A[t]his is not an exemption case.@ At oral argument, Gables Realty urged that this could not be an exemption case because the Tax Code provides for no *de facto* exemptions. It further argued that, because it is only attempting to reduce its tax appraisal, as opposed to claiming entitlement to an exemption provision, it is merely asserting its right to contest the Appraisal District=s tax assessment. The Appraisal District responds that this is an exemption case because section 25.07 applies only if the leased property is tax exempt to the owner and that, unless we first determine whether the property is exempt, we cannot reach Gables Realty=s further issue concerning the applicability of section 25.07. Whether we characterize the issue as one involving an exemption determines who bears the burden of proving its application. Statutes imposing a tax must be strictly construed against the taxing authority and liberally construed in favor of the taxpayer. *See Upjohn Co. v. Rylander*, 38 S.W.3d 600, 606 (Tex. App.CAustin 2000, pet. denied). Exemptions, on the other hand, are matters of legislative Agrace.@ *See Commissioner v. Sullivan*, 356 U.S. 27, 28 (1958). A[T]o

**4**

promote uniformity and equality in taxation, we construe tax exemptionsCand provisions tantamount to tax exemptionsCstrictly against the taxpayer and in favor of the taxing authority.@³ *Texas Utils. Elec. Co. v. Sharp*, 962 S.W.2d 723, 726 (Tex. App.CAustin 1998, pet. denied); *accord Bullock v. National Bancshares Corp.*, 584 S.W.2d 268, 271-72 (Tex. 1979).

---

[3] We apply a contrary rule only if doubt about the applicability of a tax remains after we employ the dominant rules of statutory construction. In that circumstance, we resolve ambiguities in favor of the taxpayer. *See Calvert v. Texas Pipe Line Co.*, 517 S.W.2d 777, 781 (Tex. 1974); *Wilburn v. State*, 824 S.W.2d 755, 760 (Tex. App.CAustin 1992, no writ). Gables Realty does not dispute that its business is subject to taxation.

The issue here is whether Gables Realty is entitled to the tax consequences afforded by section 25.07.[4] Gables Realty cites no authority in which a statute providing for a favorable tax assessment by its terms has been treated as an imposition of a tax rather than an exemption from the tax. Instead, Gables Realty contends that, because section 25.07 pertains to listing and valuing leasehold interests, it is merely trying to avail itself of a favorable tax assessment, not a tax exemption. We disagree. Although it is true that Gables Realty did not apply for a tax exemption on its own behalf, the provisions on which it relies require us to construe the Tax Code to make an initial determination of whether the state-owned property remains exempt after Gables Realty=s leases. Whether the property is exempt in the first instance, and if so, the extent to which Gables Realty benefits from our construction of the exemption provisions, is primarily a challenge to the taxing authority=s application of the Tax Code not, as Gables Realty contends, a challenge of the taxing authority=s valuation of the property. Because the nature of the disputed provisions concerns matters of public policy and statutory interpretation, we believe this case cannot readily be classified as a simple assessment challenge; to do so would ignore the interrelationship of the various Tax Code sections. Under the facts of this case, we conclude that the application of section 11.11 in the context of leaseholds is Atantamount@ to an exemption and must be strictly construed in the taxing authority=s favor. *See Texas Utils. Elec. Co.*, 962 S.W.2d at 726 (holding that a deduction authorizing provision was Atantamount@to an exemption).

In further construing these statutes, we are mindful of the rules of statutory construction. One of the cardinal rules is that we must ascertain and give effect to the Legislature=s intent of the provision

---

[4] The issue of the leasehold=s market value is not before this Court.

**6**

we are construing. *See Fleming Foods of Tex. v. Rylander*, 6 S.W.3d 278, 284 (Tex.1999); *Union Bankers Ins. Co. v. Shelton*, 889 S.W.2d 278, 280 (Tex. 1994); *Calvert v. Texas Pipe Line Co.*, 517 S.W.2d 777, 780 (Tex. 1974). The Legislature=s intent should be determined by reading the language used in the particular statute and construing the Act in its entirety. *See In re Bay Area Citizens Against Lawsuit Abuse*, 982 S.W.2d 371, 380 (Tex. 1998); *Taylor v. Firemen=s & Policemen=s Civil Serv. Comm=n*, 616 S.W.2d 187, 190 (Tex. 1981). Further, we should read every word, phrase, and expression in a statute as if it were deliberately chosen, and presume the words excluded from the statute are done so purposefully. *See City of Austin v. Quick*, 930 S.W.2d 678, 687 (Tex. App.CAustin 1996), *aff=d*, 7 S.W.3d 109 (Tex. 1999) (citing *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540 (Tex. 1981)); *State v. Evangelical Lutheran Good Samaritan Soc=y*, 981 S.W.2d 509, 511 (Tex. App.CAustin 1998, no pet.); *see also* 2A Norman J. Singer, *Sutherland Statutory Construction* ' 47.25 (6th ed. 2000) (stating that there is generally an inference that omissions in a statute are intentional).

The supreme court cautions that, in construing statutes:

> Courts must take statutes as they find them. . . . They should search out carefully the intendment of a statute, giving full effect to all of its terms. But they must find its intent in its language and not elsewhere. . . . They are not responsible for omissions in legislation. They are responsible for a true and fair interpretation of the written law.

*RepublicBank Dallas, N.A. v. Interkal, Inc.*, 691 S.W.2d 605, 607 (Tex. 1985) (quoting *Simmons v. Arnim*, 220 S.W. 66, 70 (1920)). Because canons of statutory construction may be cited to support conflicting interpretations of a disputed statute, we look to Athe good sense of the situation and a simple construction of the available language to achieve that sense, by tenable means, out of the statutory

language.@ Karl N. Llewellyn, *Remarks on the Theory of Appellate Decision and the Rules or Canons About How Statutes are to be Construed*, 3 Vand. L. Rev. 395, 401 (1950).

We continue our analysis, then, with an examination of the language of section 25.07. While section 25.07 specifies that, so long as the property is exempt in the hands of its owner, a lessee should only be taxed on its possessory interest, *i.e.*, the leasehold estate, it is silent regarding how to ascertain whether the property Ais exempt from taxation to the owner of the estate.@ Tex. Tax Code Ann. ' 25.07(a). Examining the Tax Code, however, it is clear that in a case involving state-owned property, the Legislature intended the provisions of Chapter 11, entitled Taxable Property and Exemptions, to govern the determination of whether state-owned property is exempt in the first instance. *See id.* '' 11.11(a), (d), 25.07(a).

In Texas, property owned by the State Athat is not used for public purposes is taxable.@ *Id.* ' 11.11(a). Section 11.11(d) specifically addresses the situation here: A[I]f the property is . . . leased for compensation to a private business enterprise@ and used for a purpose not related to the owner=s functions or duties as an entity of the State, then the property is not exempt. *Id.* ' 11.11(d). The language used by the Legislature in section 11.11(d) is clear and unequivocal: property owned by the State but not used for public purposes is taxable to its owner. *Id.* ' 11.01(d).

Gables Realty contends that, under section 25.07, Athe tax-exempt status of the owner must be determined *before* a lease is entered; that is, *without* consideration of any lease in place.@ This is so, according to Gables Realty, because any private commercial lease would automatically negate the State=s tax-exempt status and render section 25.07 a nullity for state leases. The Appraisal District responds that,

**8**

because state property is exempt only if used for a public purpose, Gables Realty=s argument impermissibly ignores the lessee=s use of the property. Reading section 25.07 as Gables Realty urges would require us to ignore the plain language of section 11.11(d). *See Evangelical Lutheran Good Samaritan Soc=y*, 981 S.W.2d at 511 (recognizing that each section must be construed in the context of the entire statutory scheme). Had the Legislature intended for the owner=s tax-exempt status to be determined without regard to the lessee=s use of the property, it could easily have done so. Further, to accept Gables Realty=s reading of section 25.07, we would have to presume that the Legislature intended to include language that is conspicuously absent, namely, that section 25.07 applies without regard to section 11.11. The rules of statutory interpretation countenance against such a construction. *See Quick*, 930 S.W.2d at 687 (stating Aevery word excluded from a statute must be presumed to have been excluded for a purpose@). Giving full effect to section 11.11(d), we cannot say that the Legislature intended section 25.07 to apply without first considering the lessee=s private commercial use of the property.

The resolution of this appeal requires us to determine whether Gables Realty=s state-leased property is exempt under section 11.11 so that section 25.07 becomes operative; therefore, we must strictly construe the exemption provision and the situations to which it applies. In so doing, we reject Gables Realty=s construction which would permit property that is leased for a non-public purpose to retain its tax-exempt classification, even though the same property would be taxed if used by its owner in an identical manner. Such a result cannot be proper. If we interpret section 25.07 as Gables Realty requests, then we are effectively bestowing upon a private commercial lessee using state land for non-public purposes a more favorable tax status than that available to the state entity from which it leased the property. We are unaware

**9**

of any authority that would permit us to reach such a result. *See* Tex. Const. art. VIII, ' 1(a) (ATaxation shall be equal and uniform.@). Rather, the Tax Code ensures that land that is exempt to the State will become taxable at its full fee value to any lessee putting the land to private commercial use.[5] *See* Tex. Tax. Code Ann. ' 11.11.

Even if we assume this is not an exemption case and instead construe section 25.07 in Gables Realty=s favor, based on the case law, we cannot say we would reach a different result. Texas law requires all property to be taxed unless it is exempt. *See* Tex. Const. art. VIII, ' 1. To be exempt, however, A[i]t is essential . . . that the property be used for public purposes.@ *Leander Indep. Sch. Dist. v. Cedar Park Water Supply Corp.*, 479 S.W.2d 908, 912 (Tex. 1972). Here, there is no dispute that the lands are not used for public purposes. When property taxes are assessed, the law generally taxes the property owner on the value of the fee estate, regardless of whether the land is leased to another party. *See* Tex. Tax Code Ann. ' 25.06 (AExcept as provided by Section 25.07, property encumbered by a leasehold

---

[5] That section 25.07 may have very limited application is consistent with the well-settled law that leasehold estates are rarely taxed because they are typically subsumed within the assessment on the fee estate. *See Daugherty v. Thompson*, 9 S.W. 99, 101 (Tex. 1888) (recognizing that property exempted from taxation to its owner generally remains exempt while used for the purposes on account of which the exemption is given, but becomes subject to taxation if used for a purpose which does not itself give the exemption); *County of Dallas Collector v. Roman Catholic Diocese of Dallas*, 41 S.W.3d 739, 744 (Tex. App.CDallas 2001, no pet.).

. . . shall be listed in the name of the owner of the property so encumbered.@); *Martin v. City of Mesquite*, 590 S.W.2d 793, 798 (Tex. Civ. App.CDallas 1979, writ ref=d n.r.e.). Section 25.07 is an exception to the general rule that leasehold interests are typically subsumed and taxed as part of a fee estate; thus, only when the fee estate is exempt from taxation does section 25.07 become operative to authorize taxation of the leasehold estate. Tex. Tax Code Ann. ' 25.07; *see also Martin*, 590 S.W.2d at 798. In this manner, the constitutional directive that all non-exempt property be taxed is complied withCif property is notexempt and leased, the lease is subsumed by the fee estate; if the property is leased and the fee remains exempt, the non-exempt leasehold becomes the taxable estate. *See County of Dallas Collector v. Roman Catholic Diocese of Dallas*, 41 S.W.3d 739, 744 (Tex. App.CDallas 2001, no pet.) (AUnless the leasehold involves exempt property, the leasehold is not independently taxed, but rather, it is subsumed within the value of the fee simple estate.@); *see also* Op. Tex. Att=y Gen. No. JM-59 (1983) (determining whether state park=s concession rights were tax exempt).

Gables Realty argues that our decision in *University Christian Church v. City of Austin*, 789 S.W.2d 361 (Tex. App.CAustin 1990, no writ), Anecessarily recognized the application of . . . section 25.07 to a situation like the case at bar.@ We disagree. In that case, University Christian Church owned two parking lots across the street from its sanctuary building, near The University of Texas at Austin campus. *Id.* at 361. The church entered into a commercial parking venture with Allright Parking of Austin, Inc., whereby Allright paid the church a minimum monthly rental plus a percentage of gross receipts. *Id.* On remand from the supreme court, we determined that the evidence was factually sufficient to support the jury=s verdict that the parking lots were not exempt. *Id.* at 363. In upholding the jury verdict, we

**11**

commented, AThe evidence shows that Allright=s lease has not significantly altered the actual use of the lots, except to the extent that there is now a profit made from that use.@ *Id.* at 365.  We went on to Anote that [the taxing authority] could tax Allright=s leasehold estate instead of the church=s property interest.@ *Id.*

Gables Realty seizes upon this language and offers it as support for its position. *Christian Church*, however, is distinguishable.  In that case, the issue before this Court involved a jury verdict for delinquent taxes.  Because we did no analysis regarding the application of sections 23.13 and 25.07, any statement regarding the taxing authority ability to tax the leasehold interest was *dictum*.  Further, in that case, it was clear that Allright=s use of the property did not differ significantly from the church=s.  Here, the property is being put to an entirely different useCa private non-public use.  Because the very issue presented in this case turns on the changed use of the property, *Christian Church* does not apply.

Thus, we hold that whether state property is exempt in the hands of its owner under section 25.07 must be determined by applying section 11.11, taking full account of the lessee=s use of the property.[6] Because Gables Realty uses the leased properties for private commercial use, the State=s lands are not exempt from taxation, thereby precluding application of section 25.07.  Accordingly, we overrule Gables

---

[6] Our conclusion does not mean that a party in Gables Realty=s situation will always be burdened by a tax appraisal based on the full value of the fee estate.  Courts recognize that, due to the contractual nature of lease agreements, often Athe ultimate tax burden is left to the process of bargaining between the parties.@ *Martin v. City of Mesquite*, 590 S.W.2d 793, 798 (Tex. Civ. App.CDallas 1979, writ ref=d n.r.e.).  While parties are free to challenge tax assessments in court, they may also protect themselves by negotiating favorable contract terms.  To be sure, a lessee does not automatically waive its rights under the Tax Code by agreeing to be responsible for the owner=s taxes.  Instead, as here, where a party believes that it is being wrongly taxed, it may file suit for a judicial determination of its rights.

Realty=s first issue. Because this issue is dispositive of the appeal, we do not address Gables Realty=s

remaining issues. *See* Tex. R. App. P. 47.1.

## CONCLUSION

Having concluded that section 25.07 is inapplicable to the facts of this case, we overrule

Gables Realty=s issues on appeal and affirm the judgment of the district court.

Jan P. Patterson, Justice

Before Justices Kidd, Patterson and Puryear

Affirmed

Filed: May 31, 2002

Publish